UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CLIFF ROUSE,                                      ) | C/A No.: 4:14-cv-726-JMC-TER |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.                                                     ) | REPORT AND RECOMMENDATION |
| ) | |
| LT. CLAREY;                                      ) | |
| CHIEF SCHWARTS, AND                     ) | |
| CAPTAIN WINEGLASS                       ) | |
| ) | |
| Defendants.   ) | |
| _____ ) | |

## **PROCEDURAL BACKGROUND**

The Plaintiff, Cliff Rouse, proceeding *pro se* filed this action under 42 U.S.C. § 1983[1] on March 5, 2014, alleging violations of his constitutional rights. At all times relevant to the allegations in the complaint, Plaintiff was a pretrial detainee at the Georgetown County Detention Center ("GCDC"). Defendants filed a motion for summary judgment on November 6, 2014. (Doc. #53). Because Plaintiff is proceeding pro se, he was advised on or about November 7, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in dismissal of his complaint. The Plaintiff filed a response in opposition on November 24, 2014. (Doc.#59). Defendants filed a reply attaching additional affidavits. (Doc. # 68).

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

**DISCUSSION**

**ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS**

The Plaintiff alleges a constitutional violation due to the conditions of confinement at the GCDC. Specifically, Plaintiff alleges as follows, quoted verbatim, in part:

> 1: Black mold. Im Cliff Rouse is presently confined at Georgetown County Detention Center in Housing Unit H cell #8. Black Mold is growing all over the walls in this cell My Chest hurts when I Inhale and Exhale headaches through out the Entire Day. left to onley worry about my life. Not wanting to die from this disease.
>
> 2: Cold and Raw Food, the Georgetown County Detention Center Does not Cook the food like it should be Cooked. The food is Cold because of No Hot Boxes to keep food warm.
>
> 3: The uniforms and Clothes at the Georgetown County Detention Center is Dirty after they have been washed.
>
> 4: Food trays are 20 years old most of the time when you get your food stagnated water is leaking from the tray. The water has a bad smell. Knowing if you was to Cut the tray open you would find Mold inside the tray. Knowing when you eat the food it is going to make you sick.
>
> 5: Generator to small: the Generator at the Georgetown County Detention Center is to small to run the Heart and Air Systems. From 2-12-14 to 2-15-14 when the Ice Storm Nock out power. I had No Air runing or heat in my Cell during this time. Under these Harsh living Conditions I feel I have lived in Cruel Unussale Punishment Condition.

(Complaint, entry #1-2).

Defendants filed a motion for summary judgment along with a memorandum affidavits and exhibits in support. Plaintiff filed a reply asserting that six officers are willing to testify on his behalf, to wit: "Officer Veronica Gibbs, OfficerNeal Bosherass, Officer Ms. Hewitt, officer, officer, Hernandez, officer, Ms. Washington, officer McAlister." (Doc. # 59, p. 2). Defendants filed a reply

2

and attached affidavits from Justin T. McAlister, Neal Boshears, Mary Hewitt, and Veronica Gibbs with each attesting that they have been employed at the Georgetown County Detention Center as a correctional officer for at least a year to several years, and there is not a black mold problem in any portion of the facility to their knowledge. (Doc. # 68-1 to #68-4).

## STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e);

3

Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the

4

Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the Plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, Plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented"

to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

## AFFIDAVITS

Defendants submitted the affidavits of Joanne L. Clary, Collette R. Wineglass, James Drye, Justin T. McAlister, Neal Boshears, Mary J. Hewitt, and Veronica R. Gibbs who all attest that they are current employees of the GCDC having worked there from at least a year to several years. Further, they each attest that they are not aware of any black mold problem in any portion of the facility. (Docs. # 53-2 to 52-4 and #68-1 to #68-4).

## CONDITIONS OF CONFINEMENT

As discussed, Plaintiff alleges constitutional violations based on black mold in the facility, the meals are not cooked properly, the uniforms are dirty even after being washed, the food trays are cold and if they were cut open they would have mold in them, and the generator is too small since there was no running air or heat in his cell during the ice storm in February 2014.

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n.16. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d

987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)).  Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering.  Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995).  The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process--even though the conditions imposed serve some ordinarily legitimate state objective."  Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants.  Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)).  Further, the Plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim.  Id. at 1380-1381.

     Plaintiff has not presented evidence to create a genuine issue of material fact as to whether he was denied the minimal civilized measure of life's necessities, or that the named defendants engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result." See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on

7

the part of the Defendants. Strickler, supra  Further, Plaintiff has failed to show any express intent on the part of the Defendants to punish him. Based on the affidavits submitted, the Defendants assert there is no mold problem in any portion of the facility. Plaintiff has alleged that the mold makes him sick but has not provided any evidence to support his allegations.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra.  As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials.  The Supreme Court stated this principle and established the appropriate standard in Whitley v. Albers, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all  must involve more than  ordinary lack of due care for the prisoner's interest or safety.

> . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . . .  Id., at 1084.

Plaintiff has failed to present evidence that the Defendants wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm. Accordingly, it is recommended that Defendants' motion for summary judgment be granted.

## QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982).

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818. In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that the Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the Defendants' motion for summary judgment be granted on this issue.

## **SUPERVISORY LIABILITY**

Viewing the Complaint in the light most favorable to Plaintiff, and liberally construing the Complaint, Plaintiff has failed to plead sufficient allegations to state a claim against Defendants. If

Plaintiff has named the Defendants due to their supervisory positions, the claim fails. Because there is no doctrine of respondeat superior in § 1983 claims, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, see Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).  As discussed above, Plaintiff has failed to plead facts sufficient to establish that Defendants are liable under a theory of supervisory liability.

## PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims

if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

**CONCLUSION**

The Plaintiff has failed to show that the Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by the Defendants (document #53) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT[2].

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 26, 2015
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[2] It is noted that Plaintiff filed a discovery motion (doc. #73) outside the court's scheduling order. If this motion is not deemed moot, it is denied.

12